UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
TOMAS CRUZ FAJARDO,

                              Petitioner,

              -v-

DIRECTOR THOMAS DECKER, NEW YORK FIELD
OFFICE, U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, SECRETARY ALEJANDRO
MAYORKAS, U.S. SECRETARY OF HOMELAND
SECURITY, MERRICK GARLAND, U.S. ATTORNEY
GENERAL, and SHERIFF CARL E. DUBOIS, ORANGE
COUNTY,

                              Respondents.
```

22 Civ. 3014 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Petitioner Tomas Cruz Fajardo ("Fajardo"), a native and citizen of Honduras, seeks a writ

of habeas corpus, pursuant to 28 U.S.C. § 2241, the All Writs Act, 28 U.S.C. § 1651, and Article

I, Section 9 of the United States Constitution, U.S. Const. art. 1, § 9, against respondents Thomas

Decker, Director of the New York Field Office of the United States Immigration and Customs

Enforcement ("ICE"), Alejandro Mayorkas, Secretary of the Department of Homeland Security

("DHS"), Merrick Garland, United States Attorney General, and Carl E. DuBois, Orange County

Sheriff (collectively, "respondents" or "the Government"). Dkt. 8 ("Amended Petition" or "Am.

Pet."). Fajardo asks the Court to direct respondents to immediately release Fajardo from custody

on his own recognizance or under reasonable conditions of supervision or, in the alternative,

order that Fajardo receive an individualized hearing before an impartial adjudicator at which

respondents bear the burden of proving, by clear and convincing evidence, that his continued

detention is justified. *Id.* at 38–39. Fajardo also asks that the Court enjoin respondents from

moving him from the New York City area while habeas proceedings are pending. *Id.* at 38.  The Government opposes Fajardo's petition.

For the following reasons, the Court grants Fajardo's petition in its central part.  The Court orders that, within 10 days, respondents take Fajardo before an immigration judge for an individualized hearing consistent with this Opinion and Order or otherwise release him from custody.  The Court denies as moot Fajardo's request to enjoin respondents from relocating him from the New York City area, as Fajardo will have the right to attend the imminent bond hearing.

## I.      Background

### A.      Factual Background[1]

Fajardo is a native and citizen of Honduras who entered the United States at an unknown time and place unlawfully—that is, without inspection, admission, or parole.  Dkt. 11-2 at 2; Dkt. 13 ("Declaration of Deportation Officer Mayra A Pardo-Figueroa" or "Decl.") at 2.

#### 1.      Fajardo's Criminal Record

Fajardo's federal "rap sheet" and the declaration of ICE Deportation Officer Mayra A Pardo-Figueroa reflect the following criminal arrests and convictions: (1) a February 5, 2015 arrest for aggravated unlicensed operation of a motor vehicle in the first degree, and an October 13, 2015 guilty plea to that offense, resulting in a $100 fine; (2) an August 22, 2015 arrest for aggravated unlicensed operation of a motor vehicle in the first degree; (3) a December 11, 2017 arrest for aggravated unlicensed operation of a motor vehicle in the third degree, and a guilty plea to that offense, resulting in a $75 fine; (4) a December 22, 2017 arrest for aggravated unlicensed operation of a motor vehicle in the third degree, and an April 19, 2018 guilty plea to

---

[1] This factual account draws primarily from Fajardo's first amended petition, Dkt. 8 ("Amended Petition" or "Am. Pet."), the documents included with the Government's return on the amended petition, Dkt. 11, and the declaration of ICE Deportation Officer Mayra A. Pardo-Figueroa, Dkt. 13 ("Declaration of Deportation Officer Mayra A Pardo-Figueroa" or "Decl.").

that offense, resulting in a $75 fine; (5) an April 13, 2018 arrest for, *inter alia*, operating a motor

vehicle with 0.08 of 1% alcohol or more in his blood, and a February 15, 2019 guilty plea to that

offense, resulting in a one-year conditional discharge, a $350 fine, and a $25 surcharge; (6) an

October 5, 2019 arrest for, *inter alia*, operating a motor vehicle with 0.08 of 1% alcohol or more

in his blood and a guilty plea to that offense, resulting in a six-month license revocation, a 3-year

term of probation, a $500 fine, and a $25 surcharge; (7) a January 15, 2020 resentencing to five

days' community service for violating the conditional discharge imposed on February 15, 2019;

and (8) a March 5, 2021 arrest for, *inter alia*, circumventing installation and operation of ignition

interlock devices and aggravated unlicensed operation of a motor vehicle.  Dkt. 11-1 at 7–11;

Decl. at 2–5.

### 2.    Fajardo's Immigration Proceedings

On September 8, 2021, ICE detained Fajardo at the Orange County Jail in Goshen, New

York.[2]  Dkt. 11-2 at 1.  The notice to appear charged that Fajardo is subject to removal under

section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), for being a noncitizen[3]

present in the United States without being admitted or paroled.  *Id.* at 2.  That day, Fajardo

requested a bond hearing to review ICE's determination that he was subject to discretionary

detention.  *Id.* at 6–8.

On September 14, 2021, the Immigration Judge (the "IJ") conducted a custody

redetermination hearing.  Dkt. 11-4 at 1; *see also* Dkt. 11-6 at 15–21.  Fajardo there conceded

---

[2] Fajardo's rap sheet includes two immigration-related arrests before his September 8, 2021 detention: a March 28, 2019 arrest at the Peace Bridge in Buffalo, New York for "alien inadmissibility," and a September 8, 2019 arrest in New York, New York for being a noncitizen present without admission or parole.  Dkt. 11-1 at 5.

[3] This opinion uses the term "noncitizen" as equivalent to the statutory term "alien."  *See* 8 U.S.C. § 1101(a)(3); *Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020).

removability, designated Honduras as the country of removal, and applied for cancellation of removal. Dkt. 11-6 at 17–18. A custody redetermination form dated September 15, 2021 indicated that Fajardo was at a heightened risk of severe illness and death from COVID-19, in particular due to his status as a former smoker and his obesity. Dkt. 11-3 at 2. The identification of the risk factors was conducted "[p]ursuant to a review conducted to comply with" *Fraihat v. U.S. Immigr. & Customs Enf't*, 445 F. Supp. 3d 709 (C.D. Cal. 2020), *rev'd and remanded*, 16 F.4th 613 (9th Cir. 2021), which had granted a preliminary injunction, sought on behalf of a class of immigration detainees, to require ICE to identify, track, and make timely custody determinations for detainees with COVID-19 risk factors. *See* Dkt. 11-3 at 2.

On September 20, 2021, the IJ issued a memorandum order denying Fajardo's request for a change in custody status. Dkt. 11-4 at 2, 4. In it, the IJ placed on Fajardo the burden to prove that he did not present a danger to the community, a threat to national security, or a flight risk. *Id.* at 2 (citing *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006)). The IJ determined that, based on Fajardo's "relatively recent arrests for driving while intoxicated" and the "lack of evidence mitigating this evidence of dangerousness," Fajardo had failed to establish that he did not pose a danger to the community. *Id.* at 3. In the IJ's view, there was "no indication that [Fajardo's] dangerous conduct has ended, given he continued to drink and drive after his first arrest," and no evidence that Fajardo had sought rehabilitation or other support. *Id.* The IJ acknowledged evidence of Fajardo's support to his family, but noted that family ties generally do not mitigate dangerousness. *Id.* The IJ did not reach the question of whether Fajardo posed a flight risk. *Id.* Fajardo appealed the decision. Dkt. 11-7 at 3.

On September 21, 2021, Fajardo requested that ICE review his custody under *Fraihat*, 445 F. Supp. 3d 709. Decl. at 7. ICE represents that the September 14, 2021 custody review had been conducted in accordance with *Fraihat*. *Id.*

On October 13, 2021, Fajardo's counsel requested a continuance of his immigration proceedings to enable him to gather more evidence for his cancellation of removal application. Decl. at 7; Dkt. 11-6 at 32. ICE denied the continuance on the ground that Fajardo was detained and unlikely to prevail on a request for discretionary relief from deportation, an application for cancellation of removal, or an appeal of the bond decision. Decl. at 7.

On October 15, 2021, Fajardo filed a motion for a custody redetermination under *Fraihat*. *id.*; Dkt. 11-6 at 29–30. In support, he argued that his diagnosis as a former smoker with obesity amounted to a material change in circumstances that arose after the September 2021 bond hearing. Am. Pet. at 2. On October 25, 2021, Fajardo refiled that motion. Decl. at 7.

On October 20, 2021, Fajardo appeared in court for a merits hearing on his application for cancellation of removal. Dkt. 11-6 at 22–55. The IJ adjourned the merits hearing to October 27, 2021 to allow for additional time to review documents submitted shortly before the hearing. *Id.* at 41. At the hearing, DHS opposed a continuance, *id.* at 33, and the IJ denied the motion to continue, *id.* at 38.

On October 27, 2021, Fajardo again appeared in court for a merits hearing on his application for cancellation of removal. *Id.* at 56–97. The IJ adjourned the merits hearing during Fajardo's testimony to November 17, 2021 to give Fajardo time to submit an accurate criminal history chart and documentation on his past arrests. *Id.* at 91–95.

On November 15, 2021, an IJ denied Fajardo's October 15, 2021 motion for a custody redetermination on the ground that he had "not shown changed material circumstances since the court's prior 9/14/21 custody determination." Dkt. 11-5 at 2.

On November 17, 2021, at the merits hearing on Fajardo's application for cancellation of removal, the IJ issued an oral decision denying that application. Dkt. 11-6 at 5; *see also id.* at 98–145. The IJ found that Fajardo met the requirement of being continuously physically present in the United States for at least 10 years, but that he failed to establish the requisite "good moral character" required to secure cancellation of removal, and that even if he had established good moral character, he had not proved that he merited cancellation of removal as an exercise of favorable discretion. *Id.* at 6. The IJ found that Fajardo's "approximately eight" arrests constituted a "significant adverse factor," *id.* at 7, that his record did not "adequately show that [he] has been rehabilitated since [his] serious driving under the influence [("DUI")] offenses," *id.* at 8, and that his driving-related offenses, "taken in their totality," provided "other reasons for finding him to lack good moral character," *id.* at 9 (internal quotation marks omitted). The IJ also noted that Fajardo's 2020 income tax return was inconsistent with his testimony about his employment. *Id.* at 9. Although recognizing Fajardo's "very significant family ties," "residence of long duration in this country," and work delivering food during the pandemic, the IJ found that the adverse factors outweighed these positive factors. *Id.* at 11. The IJ thus did not reach whether Fajardo had met the hardship requirement. *Id.* at 12.

On November 25, 2021, Fajardo filed notices of appeal to the Board of Immigration Appeals ("BIA") of (1) the November 15, 2021 decision denying his motion for custody redetermination, and (2) the November 17, 2021 decision denying his application for cancellation of removal. Decl. at 8.

On January 13, 2022, Fajardo filed a motion with the BIA to remand his case to the immigration court to assert a claim for relief from removal that had not been considered by the IJ at his merits hearing. *Id.* On January 20, 2022, DHS opposed that motion. *Id.*

On January 31, 2022, the BIA dismissed Fajardo's appeal of the IJ's September 14, 2021 bond decision. Dkt. 11-7 at 3–4. It found that Fajardo had not met his burden to establish that he is not a danger to the community. *Id.* at 3. Noting the "seriousness, recency, and recidivist nature" of Fajardo's DUI convictions, the BIA found that the "positive factors" and "alleged trauma associated with [his] wife's mental health" did not outweigh his criminal behavior. *Id.*.

On February 17, 2022, Fajardo made a humanitarian parole request. Decl. at 9. On February 25, 2022, ICE denied that request. *Id.*

On February 26, 2022, Fajardo filed a motion to reconsider the BIA's January 31, 2022 dismissal of his appeal of the IJ's bond decision. Am. Pet. at 2; Decl. at 9. As of the filing of the briefing in this case, that motion remained pending. Am. Pet. at 2; Decl. at 9.

On February 28, 2022, Fajardo called ICE, asking why he had not received a 90-day post-order custody review. Decl. at 9. ICE told Fajardo that a post-order custody review is conducted only after a final removal order and that Fajardo was not yet subject to a final removal order. *Id.* On March 8, 2022, Fajardo again requested that ICE release him. *Id.* On March 10, 2022, ICE emailed Fajardo's counsel a letter denying that request. *Id.*

On April 21, 2022, the BIA dismissed Fajardo's appeal of the IJ's November 15, 2021 decision denying his motion for custody redetermination. Dkt. 11-8 at 3–4. Pertinent here, it affirmed the IJ's decision to deny a new bond hearing because Fajardo had not established that, "since the time of his initial bond hearing on September 14, 2021, his circumstances have materially changed." *Id.* at 3 (citing 8 C.F.R. § 1003.19(e); and *Matter of Uluocha*, 20 I. & N.

Dec. 133 (BIA 1989)). The BIA rejected as moot Fajardo's bid for a bond hearing based on the preliminary injunction in *Fraihat*, because the Ninth Circuit had since set aside that injunction. *Id.* (citing *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613 (9th Cir. 2021)). Fajardo, the BIA added, had "not established that the likelihood that he will contract COVID-19 is a material change in circumstances since the time of his initial bond hearing," and this possibility would not enable him to establish, in a later bond hearing, that he was not a danger to the community. *Id.*; *see also id.* at 4.

On May 5, 2022, the BIA dismissed Fajardo's appeal of the IJ's November 17, 2021 decision denying cancellation of removal, and denied his motion to remand to enable him to pursue an application for "special rule" cancellation of removal. Dkt. 11-9 at 3–6. Agreeing with the IJ, the BIA found that Fajardo had not shown that he merits a discretionary cancellation of removal. *Id.* at 4. Although noting "several positive factors," including Fajardo's "long residence in the United States" and "his family ties in this country," the BIA found these outweighed by adverse factors, including Fajardo's eight arrests for driving-related offenses and two DUI convictions, as well as his "lack of candor regarding his employment status on his most recent tax return" and the fact that, as of his most recent arrest, he was in arrears of child support payments. *Id.* at 4–5. The BIA concluded that Fajardo had not established rehabilitation given that he continued to consume alcohol, his testimony "appeared to minimize his culpability" for his criminal conduct, and he had been arrested "relatively recently." *Id.* at 5.

### 3.    Fajardo's Petition for Review before the Second Circuit

On May 27, 2022, Fajardo filed a petition for review with the Second Circuit. Dkt. 15-1 at 1; *see also* Dkt. 11-10 at 1. On May 31, 2022, Fajardo moved before the Circuit for a stay of his removal pending resolution of that petition. Court of Appeals Docket No. 22-6248 (Dkt. 9). On June 10, 2022, the Government opposed that motion. *Id.* (Dkt. 10). On July 13, 2022, a 90-

day tolling order was filed in his case. *Id.* (Dkt. 14). On October 12, 2022, a tolling cancellation

order was filed. *Id.* (Dkt. 17). On October 27, 2022, the LR 31.2 scheduling notification, on

behalf of Fajardo, was filed, proposing a brief due date of January 4, 2023. *Id.* (Dkt. 18). On

October 28, 2022, the so-ordered scheduling notification was filed, setting Fajardo's brief due

date for January 4, 2023. *Id.* (Dkt. 19). On November 23, 2022, the Government filed a motion

to expedite the appeal. *Id.* (Dkt. 20). As of the date of this decision, Fajardo's petition and

motion for a stay remain pending, as does the Government's motion to expedite the appeal.

### 4.    ICE's Custody Review

On June 2, 2022, ICE served Fajardo with a notice stating that he was entitled to a post-

order custody review on or about August 5, 2022. Decl. at 10. On June 7, 2022, ICE emailed

and mailed a hard copy of the notice to Fajardo's attorney. *Id.*

On July 29, 2022, ICE notified Fajardo that it had completed its review of Fajardo's

custody status, his file, and the factors set forth at 8 C.F.R. § 241.4(e), (f), and (g), and

determined to continue Fajardo's detention.[4] Dkt. 15-1 at 1. ICE found that Fajardo had failed

to demonstrate that, if released, he would not pose a danger to the community or the safety of

other persons; it cited his past DUI convictions and other traffic offenses. *Id.* The decision

stated that ICE possessed the travel documents necessary to effectuate Fajardo's removal from

the United States but could not proceed with his removal due to his pending petition before the

Second Circuit. *Id.* ICE added that Fajardo could adduce evidence in the future to demonstrate

---

[4] Regulations codified at 8 C.F.R. § 241.4 govern the continued detention, beyond the statutorily
designated removal period, of noncitizens found inadmissible or ordered removed under certain
provisions. Pursuant to those, ICE conducts a custody review (1) prior to the completion of the
90-day removal period, (2) again at 180 days of detention, and (3) thereafter annually or
whenever there has been a material change in circumstances since the last annual review. *See* 8
C.F.R. § 241.4(k)(1)–(2). In such reviews, ICE makes a discretionary decision as to whether
continued detention is justified, based on numerous factors, including, *inter alia*, a detainee's
flight risk and risk of committing future crimes. *See id.* § 241.4(f).

why his removal was unlikely, and that the Enforcement and Removal Operations Division would conduct a personal interview as part of the custody review. *Id.* at 1–2.

The filings indicate that Fajardo remains detained in Orange County Jail. *See, e.g.*, Am. Pet. at 1; Dkt. 15-1 at 4.

### B.    Procedural History of This Action

On April 18, 2022, Fajardo filed his first habeas petition, seeking immediate release or a bond hearing. Dkt. 3. On June 23, 2022, the parties proposed, and the Court approved, a briefing schedule. Dkts. 5, 6. On July 5, 2022, Fajardo filed his first amended petition. Am. Pet. On July 21, 2022, the Government filed its return on the petition, its opposition to Fajardo's petition, and the declaration of Officer Pardo-Figueroa. Dkts. 11 ("Return"), 12 ("Opposition" or "Opp."), 13 ("Decl."). On August 4, 2022, Fajardo filed his reply. Dkt. 14 ("Reply").

On August 9, 2022, the Government filed a letter notifying the Court that ICE had completed its 90-day post-order custody review of Fajardo's detention and issued a decision to continue his detention. Dkt. 15.

## II.    Jurisdiction and Venue

The Court has subject matter jurisdiction to hear Fajardo's petition for a writ of habeas corpus under 28 U.S.C. § 2241. *See, e.g.*, *Portillo v. Decker*, No. 21 Civ. 9506 (PAE), 2022 WL 826941, at *3 (S.D.N.Y. Mar. 18, 2022); *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004). Venue is proper in this District because Fajardo is detained in Orange County Jail in Goshen, New York, which is within this District. *See* 28 U.S.C. § 2241(d) ("[T]he application may be filed in the district court for the district wherein such person is in custody."); *see also Almazo v. Decker*, No. 18 Civ. 9941 (PAE), 2018 WL 5919523, at *1–2 (S.D.N.Y. Nov. 13, 2018).

### III.   Legal Standards Governing Immigration Detention

The INA includes provisions governing the detention of noncitizens at different stages of removal proceedings. Two provisions are relevant here: 8 U.S.C. § 1226(a) and 8 U.S.C. § 1231(a). Under § 1226(a), the Government may detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States," or may release the noncitizen on either "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General," or "conditional parole." 8 U.S.C. § 1226(a). Under § 1231(a), the Government "shall" detain a noncitizen ordered removed and "shall" remove the noncitizen within a period of 90 days, also referred to as the "removal period." *Id.* § 1231(a)(1)(A), (a)(2). The removal period begins on the latest of either:

(1) The date the order of removal becomes administratively final.
(2) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
(3) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

*Id.* § 1231(a)(1)(B).

Broadly speaking, noncitizens subject to § 1226 "may receive a bond hearing before an immigration judge," while noncitizens subject to § 1231 are "not entitled to a bond hearing." *Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2280 (2021). Instead, § 1231(a)(6) authorizes the Attorney General to detain certain categories of removable noncitizens for longer than the 90-day statutory removal period. *See Zadvydas v. Davis*, 533 U.S. 678, 688–89 (2001); *Reynoso v. Aviles*, 87 F. Supp. 3d 549, 562 (S.D.N.Y. 2015).

Because § 1231(a)(6), on its face, appears to authorize indefinite detention of certain classes of noncitizens, the Supreme Court has "interpret[ed] the statute to avoid a serious constitutional threat" and held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [the] statute." *Zadvydas*, 533 U.S. at 699. In so holding, the

11

Court recognized a "presumptively reasonable period of detention" of six months, after which, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701; *see also Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003).  Regulations codified at 8 C.F.R. § 241.13 implement the holding in *Zadvydas*.[5]

## IV.    Discussion

Fajardo argues that his detention at this juncture is controlled by § 1226(a), which governs noncitizens "pending a decision" as to removal, because his petition for review and motion to stay removal are pending before the Second Circuit and the functional equivalent of a stay is in place on account of the Government's forbearance policy, meaning his removal is thus neither imminent nor certain. Am. Pet. at 1, 13–14.  He asks the Court to order that respondents immediately release him from custody on his own recognizance or under reasonable conditions of supervision or, in the alternative, furnish him an individualized hearing before an impartial adjudicator at which respondents bear the burden of proving, by clear and convincing evidence, that his continued detention is justified. *Id.* at 38–39.  He argues that the BIA's practice of requiring a noncitizen detained under § 1226(a) to bear the burden of proof at a bond hearing (1) violates the Due Process Clause of the Fifth Amendment, *see id.* at 15–28, 36–37; Reply at 6–9; (2) is inconsistent with Congress's intent in enacting § 1226(a), *see* Am. Pet. at 17, 29–31, 37; and (3) violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), the latter on

---

[5] Under those regulations, a noncitizen who provides "good reason to believe there is no significant likelihood of removal . . . in the reasonably foreseeable future" is entitled to agency review of as much.  8 C.F.R. § 241.13(a).  If the agency finds that there is no significant likelihood of removal, the noncitizen must be released, unless special circumstances justify continued detention. *Id.* § 241.13(g)(1); *see id.* § 241.14.  Conversely, if there is a significant likelihood of removal in the reasonably foreseeable future, the noncitizen must continue to be detained, subject to the general procedural framework governing the detention of noncitizens after the 90-day removal period, as set forth in 8 C.F.R. § 241.4. *See id.* § 241.13(b)(1), (g)(2).

the ground that the BIA's placing the burden of proof on noncitizens facing removal marked an unexplained departure from precedent, *see id.* at 17, 32–36, 38. Separately, he asks the Court to enjoin moving him from the New York City area during this habeas action. *Id.* at 38.

The Government argues that Fajardo's detention is pursuant to § 1231(a), governing noncitizens ordered removed, because the BIA has so ordered. Opp. at 2. It argues that Fajardo is entitled under § 1231(a) only to periodic custody reviews, that any bond hearing under § 1231(a) would come only after his detention passes the presumptively reasonable six-month period, and that he would have the burden at such a hearing to justify his release. *See id.* at 14–23. Alternatively, the Government argues, even if Fajardo's detention falls under § 1226(a), the burden at a bond hearing under § 1226(a) falls on him. *See id.* at 26–34, 37–42.

For the following reasons, the Court holds that Fajardo's detention is governed by § 1226(a); and that, applying the due process analysis in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020), he is entitled to a bond hearing, at which the Government must justify his continued detention by clear and convincing evidence and at which the impartial adjudicator must consider alternatives to detention and Fajardo's ability to post bond. Because the Court grants Fajardo such relief based on due process, the Court has no occasion to reach Fajardo's arguments based on statutory interpretation and the APA, and denies as moot his request to enjoin respondents from relocating him from the New York City area during this proceeding.

## A.    Provision Governing Fajardo's Detention

The threshold question is whether § 1226(a) or § 1231(a) governs Fajardo's detention.

The Second Circuit's decision in *Hechavarria v. Sessions*, 891 F.3d 49 (2d Cir. 2018), *as amended* (May 22, 2018), provides a starting point for the Court's analysis. The Circuit there addressed the circumstance of a noncitizen, Joseph Emanuel Hechavarria, who had been ordered removed and had exhausted his options for administrative review. Hechavarria's appeal was

pending in the Circuit, which had entered a stay of removal pending resolution. The Circuit held

that § 1231(a) did not apply. It noted that of the three statutory scenarios that can trigger the start

of the removal period under § 1231(a), only the second applies to immigrants like Hechavarria

who are subject to a removal order and "have filed petitions for review with a court of appeals

and received a stay." *Id.* at 55. In that scenario, the Circuit noted, "the removal period is only

triggered on 'the date of the court's final order.'" *Id.* (citing 8 U.S.C. § 1231(a)(1)(B)(2)). But,

it noted, in Hechavarria's pending case, "[w]e have not yet issued a final order." *Id.* That

§ 1231 did not apply to cases in this posture, the Circuit noted, was confirmed by the statutory

structure. Section 1231 addresses the "logistics of removal for immigrants who have been

'ordered removed'"; it thus "assumes that the immigrant's removal is both imminent and

certain," and that "no substantive impediments remain to the immigrant's removal." *Id.* But,

with Hechavarria's removal stayed and the Circuit not having issued a final order regarding his

petition for review, that was not so, and "that statute [§ 1231] does not apply." *Id.* at 56; *see also*

*id.* at 57 ("Because Hechavarria has been granted a stay of removal while his petition for review

is pending, there remains a very clear impediment to his removal—review by this Court.").

Instead, "the controlling statute is 8 U.S.C. § 1226." *Id.* at 56. The Circuit rejected the

Government's reading of § 1226 to apply only *prior* to a noncitizen's removal order. Rather, it

held, "section 1226 governs the detention of immigrants who are not immediately deportable."

*Id.* at 57.

    *Hechavarria* is on all fours with this case, with one exception: The noncitizen there had

been *granted* a stay of removal by the Second Circuit, whereas here, Fajardo has moved for a

stay, but his application for a stay is pending. But that distinction is more form than substance.

It is common ground among the parties that Fajardo's case is subject to a forbearance policy of

the Government under which it forbears from removing noncitizens with petitions for review

pending before the Circuit.  The policy "assure[s] that removal will not occur" while a

noncitizen's petition for review of a removal order is pending before the Circuit.  *In re Immigr.*

*Petitions for Rev. Pending in the U.S. Ct. of Appeals for the Second Cir.*, 702 F.3d 160, 162 (2d

Cir. 2012); *see also Argueta Anariba v. Shanahan*, 190 F. Supp. 3d 344, 348 (S.D.N.Y. 2016)

("It appears that, as a result of [the forbearance] policy, the Second Circuit Court of Appeals has

in some instances declined to act on motions for stays of removal when filed alongside petitions

for review."); *Heredia v. Shanahan*, 245 F. Supp. 3d 521, 523–24 (S.D.N.Y. 2017) ("As a result

[of the forbearance policy], the Second Circuit does not, as a rule, rule upon motions for a stay of

removal."), *judgment vacated, appeal dismissed sub nom. Heredia v. Decker*, No. 17-1720, 2018

WL 1163180 (2d Cir. Jan. 2, 2018).  In light of that policy, there is perforce no need for the

Circuit to act on the noncitizen's stay application.  In function, therefore, a stay is in place,

imposed not by the Court, but, anticipatorily by the Government, presumably precisely to avert

serial litigations over stay applications in such cases.

   For this reason, a string of district courts, presented with similar fact patterns, have held

that noncitizens with pending petitions for review and applications to stay removal in the Circuit

are detained under § 1226(a).  *See, e.g.*, *Vazques v. Garland*, No. 21 Civ. 0477 (EAW), 2021 WL

3741589, at *2 (W.D.N.Y. Aug. 24, 2021); *Doe v. Decker*, No. 21 Civ. 5257 (LGS), 2021 WL

6066015, at *1–2 (S.D.N.Y. Nov. 19, 2021); *Hernandez Aguilar v. Decker*, 482 F. Supp. 3d 139,

146 (S.D.N.Y. 2020); *Rodriguez Sanchez v. Decker*, 431 F. Supp. 3d 310, 313–15 (S.D.N.Y.

2019); *Alexandre v. Decker*, No. 17 Civ. 5706 (GBD) (KHP), 2019 WL 1407353, at *6

(S.D.N.Y. Mar. 28, 2019); *Heredia*, 245 F. Supp. 3d at 524; *Argueta Anariba*, 190 F. Supp. 3d at

350; *Rone v. Shanahan*, No. 15 Civ. 9063 (AKH), 2016 WL 1047393, at *7–8 (S.D.N.Y. Mar.

10, 2016), *judgment vacated, appeal dismissed as moot*, No. 16-1541, 2016 WL 7668454 (2d Cir. Nov. 15, 2016). Fajardo invokes this line of authority here. Am. Pet. at 13–14; Reply at 3–5. The Court finds the logic of these cases persuasive. The Government notably does not contend that the cases are factually distinguishable. *See, e.g.*, Opp. at 18.

In arguing that, because Fajardo (and the noncitizens in the similarly postured actions above) has been ordered removed pursuant to an administratively final order and the Circuit has not formally acted on his motion to stay removal, his detention is governed by § 1231(a), the Government relies in part on the Supreme Court's reading of § 1231(a) in *Johnson v. Guzman Chavez. See id.* at 17–18. The Court there held that § 1231 governed the detention of noncitizens who had been removed, reentered without authorization, became subject to reinstated removal orders, and sought withholding of removal. 141 S. Ct. at 2284–85. The Court's analysis turned on the first of three clauses of § 1231(a)(1)(B), which keys the start of the removal period to the "date that the order of removal becomes administratively final." *Id.* at 2284. That clause applied, the Court stated, where the "*agency's* review proceedings, separate and apart from any judicial review proceedings that may occur in a court," have been completed. *Id.* Thus, "once the BIA has reviewed the [removal] order . . . , DHS is free to remove the alien *unless* a court issues a stay." *Id.* at 2285. It followed that § 1231 governed the detention of noncitizens subject to reinstated orders of removal, as their *prior* removal orders had "long" been "administratively final," and § 1231(a)(5) "explicitly prohibits them from seeking review or relief from the order after it is reinstated." *Id.* In so holding, the Supreme Court rejected the noncitizens' argument that § 1226 applied to their detention because the withholding proceedings had the capacity to result in a court ruling that they could not be removed to a specific country and that their removal in this sense was "pending." *Id.* The Court emphasized that withholding

relief "relates to *where* an alien may be removed," but not to "the antecedent question *whether* an alien is to be removed." *Id.* at 2286.

Guzman Chavez is readily distinguished. It concerned once-removed noncitizens subject to reinstated orders of removal. Fajardo's case arises at an earlier stage of removal proceedings and does not implicate an earlier consummated removal order. Using the Supreme Court's formulation in *Guzman Chavez*, because Fajardo's petition for review of the administrative removal order itself is pending before the Second Circuit, the "antecedent question" of "*whether*" he is to be removed remains open, with no final resolution. *Id.* The analysis in *Hechavarria* thus controls. And the courts in this Circuit to have considered the applicability of § 1231(a) following *Guzman Chavez* have continued to find that § 1226 applies to noncitizens in postures like Fajardo's, with petitions pending before the Second Circuit. *See, e.g., Jack v. Decker*, No. 21 Civ. 10958 (VSB) (RWL), 2022 WL 4085749, at *7–8 (S.D.N.Y. Aug. 19, 2022) (finding *Guzman Chavez* inapposite in case involving noncitizen with pending petition for review, on ground that *Guzman Chavez* involved petitioners with reinstated removal orders), *report and recommendation adopted*, 2022 WL 16836918 (S.D.N.Y. Nov. 8, 2022); *Vazques*, 2021 WL 3741589, at *2 (holding § 1226 applies to noncitizen with pending petition for review, and that *Guzman Chavez* applied only to cases involving "reinstated orders of removal," in which "there is no question as to *whether* the alien in such a situation can be removed").

The Court therefore holds that Fajardo's detention is governed by § 1226(a).[6]

---

[6] If Fajardo's detention were in fact governed by § 1231(a), his detention since the May 5, 2022 order of removal has well exceeded *Zadvydas*'s "presumptively reasonable" six-month period. *See* Opp. at 20–21 & nn.6–7 (acknowledging this). Accordingly, even if the Government's view that § 1231 governed here were correct, Fajardo would be entitled to the opportunity to challenge his detention hearing, albeit one in which he bore the burden to prove that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701; *see also* 8 C.F.R. § 241.13 (implementing holding in *Zadvydas*).

### B.     Entitlement to a Bond Hearing with a Shifted Burden

The Court turns next to the nature of the bond hearing required by § 1226(a), and, in particular, which party bears the burden of proof at such a hearing.

Fajardo argues that the Government must bear the burden of justifying the noncitizen's continued detention, before an impartial adjudicator, based on factors including the noncitizen's ability to pay bond and the alternatives to detention.  He argues that due process so requires given the duration of his confinement, under the Second Circuit's decision in *Velasco Lopez*, and independent of the duration of a noncitizen's detention, Am. Pet. at 15–28, 36–37; Reply at 6–9; that placing the burden of proof on the noncitizen at a bond hearing is inconsistent with congressional intent, in that whereas the INA's mandatory detention provision, § 1226(c), explicitly places the burden of proof on the noncitizen, § 1226(a) does not do so, Am. Pet. at 17, 29–31, 37; and that the BIA's imposition of the burden of proof on noncitizens violated the APA, insofar as it marked an unexplained, and arbitrary and capricious, departure from precedent, *id.* at 17, 32–36, 38.

The Government counters that, if § 1226(a) governs, Fajardo should bear the burden of proof at a bond hearing.  Opp. at 23–26.  Due process, it argues, does not justify shifting the burden to the Government, because Fajardo's detention has not been so prolonged as to warrant burden shifting under *Velasco Lopez*, *id.* at 2, 30–34 & n.13, and a burden-shift would improperly constrain the IJ's discretion at such hearings, *id.* at 44–47.  The Government also resists Fajardo's statutory argument, including on the ground that *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), rejected a statutory entitlement under § 1226(a) to a bond hearing, *id.* at 38–42, and his APA claim, on the ground that the BIA decision placing the burden of proof on the noncitizen was not an unexplained departure from precedent, *id.* at 42–43.

The Court resolves this issue based on the Second Circuit's decision in *Velasco Lopez*. In light of the fact that Fajardo has been detained for more than 15 months without the Government having to justify his detention at a bond hearing, due process today entitles Fajardo to a bond hearing at which the Government bears the burden of proof.

As the Second Circuit noted in *Velasco Lopez*, the Due Process Clause of the Fifth Amendment, which forbids the Government from depriving any "person" of "life, liberty, or property" without "due process of law," U.S. Const. amend. V, "covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez*, 978 F.3d at 850 (citing *Zadvydas*, 533 U.S. at 693). The Circuit there held that due process requires that a noncitizen who has been subjected to "prolonged detention" under § 1226(a) receive a bond hearing in which the Government justify by clear and convincing evidence that he is either a flight risk or a danger to the community. *Id.* at 846; *id.* at 855 (upholding the imposition of a "clear and convincing standard" in such hearings). In evaluating the petitioner's entitlement to a bond hearing with a shifted burden, the Circuit applied the *Mathews v. Eldridge* balancing test, considering (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 851 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Since *Velasco Lopez*, numerous courts in this District, applying that mode of analysis, have ordered bond hearings for noncitizens detained under § 1226(a), with the burden shifted to the Government, including in cases involving noncitizens detained for shorter periods of time

than here. *See, e.g.*, *O.F.C. v. Decker*, No. 22 Civ. 2255 (JPC), 2022 WL 4448728, at *9 (S.D.N.Y. Sept. 12, 2022) (ordering bond hearing with burden on Government for noncitizen detained under § 1226(a) for more than 15 months while appeal to the BIA of removal order was pending); *Banegas v. Decker*, No. 21 Civ. 2359 (VEC), 2021 WL 1852000, at *2–3 (S.D.N.Y. May 7, 2021) (ordering bond hearing with burden on Government for noncitizen detained under § 1226(a) for nine months, while petition for review was pending); *Jimenez v. Decker*, No. 21 Civ. 880 (VSB), 2021 WL 826752, at *11 (S.D.N.Y. Mar. 3, 2021) (ordering bond hearing with burden on Government for noncitizen detained under § 1226(a) for more than 12 months in ongoing removal proceedings); *Gonzalez Evangelista v. Decker*, No. 20 Civ. 8758 (AKH), 2021 WL 101201, at *5 (S.D.N.Y. Jan. 12, 2021) (ordering bond hearing with burden on Government for noncitizen detained under § 1226(a) for more than 10 months in ongoing removal proceedings), *appeal withdrawn sub nom. Evangelista v. Decker*, No. 21-599, 2021 WL 4167365 (2d Cir. May 28, 2021); *Arana v. Decker*, No. 20 Civ. 4104 (LTS), 2020 WL 7342833, at *9 (S.D.N.Y. Dec. 14, 2020) (ordering bond hearing with burden on Government for noncitizen detained under § 1226(a) for more than nine months, while appeal to the BIA of removal order was pending). *But see Huanga v. Decker*, No. 22 Civ. 1301 (AT) (GWG), 2022 WL 1145048, at *9 (S.D.N.Y. Apr. 19, 2022) (recommending that the court deny request for bond hearing by petitioner detained under § 1226(a) for more than seven months with ongoing removal proceedings, on the grounds that his detention had not been especially prolonged, his removal proceedings had taken place more "expeditiously" than those of petitioners granted bond hearings, there were no specific impediments to his ability to mitigate his prior convictions, and his drunk driving arrests implicated the Government's interest in public safety).

Consistent with the *Mathews* analyses in *Velasco Lopez* and the cases applying it, the Court finds that Fajardo is entitled to a bond hearing with the burden placed on the Government to justify his detention by clear and convincing evidence.

The first *Mathews* factor, the private interest at issue, favors Fajardo, as the "interest in being free from imprisonment" is the "most significant liberty interest there is." *Velasco Lopez*, 978 F.3d at 851. Like the petitioners in *Velasco Lopez*, *Arana*, and *Jimenez*, Fajardo has been detained in a correctional facility that also houses individuals serving criminal sentences, with restricted access to family and friends and limited ability to "engage in normal activities permitted by life outside of a penal facility." *Arana*, 2020 WL 7342833, at *5. The infringement on Fajardo's liberty interest has been "all the more acute" given that he has been detained during the COVID-19 pandemic. *Jimenez*, 2021 WL 826752, at *8. As has been frequently chronicled, during this period, criminal and immigration custody has been characterized by frequent and highly restrictive lockdowns; limits on visits from family and counsel; isolation to a degree uncommon in penal facilities; and the well-founded fear—and heightened risk of the spread—of a serious respiratory disease. *See, e.g., id.* (noting that petitioner's detention during COVID-19 pandemic has involved "heightened risk and stress," as well as "lockdowns, isolation, and fear of disease"); *Arana*, 2020 WL 7342833, at *5 (noting that, "as a result of the ongoing COVID-19 pandemic, [the petitioner's] ability to take measures necessary to protect himself from infection in a prison setting is inherently restricted").

The second *Mathews* factor, the risk of an erroneous deprivation of the liberty interest and the value of the procedural safeguards at issue, also favors putting the burden on the Government to justify continuing to hold Fajardo in jail. To be sure, Fajardo does not claim the same procedural obstacles faced by the petitioner in *Velasco Lopez*, where the Government

refused to provide relevant information or produce the petitioner for criminal court proceedings. *See Velasco Lopez*, 978 F.3d at 852–53. Nonetheless, the Court is mindful of the circumscribed ability that Fajardo (and others in custody during this period) have had during the past 15 months to meet and otherwise confer with counsel, both as to the pending petition for review and to build a case for release on conditions of bail while that petition pends. *Cf., e.g., Gonzalez Evangelista*, 2021 WL 101201, at *4. And, as the Circuit noted in *Velasco Lopez*, "'as the period of . . . confinement grows,' so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention." *Velasco Lopez*, 978 F.3d at 853 (quoting *Zadvydas*, 533 U.S. at 701). As of this decision, Fajardo has been detained for 15 months without the Government having to prove at a hearing that he presents a danger to the community or a flight risk, let alone dangers and risk that are incapable of being addressed by well-crafted conditions of release. And with his petition for review pending with no indication of when it will be resolved, Fajardo's detention continues "without an end in sight," *id.* at 855. Absent a bond hearing at which the Government would be required justify Fajardo's continued detention, there is, unavoidably, a meaningful risk of the erroneous deprivation of Fajardo's essential liberty interest in freedom from custody. *Cf., e.g., Jimenez*, 2021 WL 826752, at *9 (finding second factor in favor of petitioning noncitizen, who had limited ability to collect evidence for bond hearing and stood "a far better chance of securing bail if the burden of proof [wa]s instead placed on the Government").

The third *Mathews* factor, the Government's interest, does not outweigh these first two factors. The Government undeniably has a significant interest in protecting the public's safety and ensuring that noncitizens appear at immigration proceedings. And Fajardo's record is blemished as to the first of these interests. His multiple DUI convictions in particular would

provide grist for an argument at such a hearing in support of either continued detention or the impositions of conditions directed to that risk. But assessing those considerations is the very purpose of a bond hearing. And, as the Circuit emphasized in *Velasco Lopez*, "the Government has not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight," and "shifting the burden of proof to the Government to justify continued detention promotes the Government's interest—one we believe to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854. Placing the burden on the Government "is one way to impress the factfinder with the importance of the decision and thereby perhaps to reduce the chances that inappropriate commitments will be ordered." *Linares Martinez v. Decker*, No. 18 Civ. 6527 (JMF), 2018 WL 5023946, at *3 (S.D.N.Y. Oct. 17, 2018) (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979)). And doing so is unlikely to impose an undue administrative or financial burden on the Government, as the Government "is generally in a better position than a detained [noncitizen] to gather and present evidence relevant to the bond determination." *Id.*; *see also Jimenez*, 2021 WL 826752, at *10; *Arana*, 2020 WL 7342833, at *7.[7]

Fajardo also persuasively argues that the impartial adjudicator who conducts his bond hearing be ordered to consider his ability to pay bond and alternatives to detention. Consistent with this request, "courts in this District overwhelmingly agree that IJs must consider these two factors—alternatives to imprisonment and ability to pay—when determining bond for a detained

---

[7] That Fajardo has been ordered removed does not bear on his eligibility for relief under *Velasco Lopez*, as "the stage of the removal process was not a factor in the Second Circuit's conclusion that Velasco Lopez's detention violated due process, and it is unclear why that distinction would justify a different conclusion" in this case. *O.F.C.*, 2022 WL 4448728, at *9 (internal citation omitted); *see also Jimenez*, 2021 WL 826752, at *10 (noting that even though an IJ had ordered the petitioner's removal, his removal was not a "foregone conclusion").

immigrant." *O.F.C.*, 2022 WL 4448728, at *10 (citing cases and adding that an adjudicator should consider the factors even if they do not ultimately release the noncitizen or modify the bond); *see also Arana*, 2020 WL 7342833, at *8; *Hernandez v. Decker*, No. 18 Civ. 5026 (ALC), 2018 WL 3579108, at *12 (S.D.N.Y. July 25, 2018). The Government argues that such requirements may interfere with the IJ's consideration of whether a noncitizen poses a danger to the community or unreasonably inhibit the IJ's "broad discretion" in determining a noncitizen's eligibility for release. Opp. at 44–47. That is wrong. To the extent that alternatives to detention may sufficiently guard the public against danger from the noncitizen were he released from custody, such is an appropriate part of considering dangerousness, just as consideration of alternatives to detention of a criminal defendant—for example, electronic monitoring, home confinement, or the imposition of a personal recognizance bond co-signed by family and/or supported by the posting of security—is a routine part of the process by which the decision between detention and release is made. *See* 18 U.S.C. § 3142 (pretrial release or detention); *id.* § 3143 (release or detention pending sentence or appeal); *see also O.F.C.*, 2022 WL 4448728, at *10 (reasoning that "it is not clear why an IJ may not consider alternative[s to detention] in deciding the danger question, since an immigrant's dangerousness to the community may be addressed" by such alternatives). Thoughtful consideration of these factors does not inhibit the ability of a neutral decisionmaker to weigh these factors in the particular case, or to conclude, in an exercise of discretion, that conditions do not exist that would satisfactorily guard against danger or flight.

In ruling that Fajardo, given the length of his detention and the other factors addressed, is entitled to a bond hearing with the burden borne by the Government, the Court does not have occasion to resolve two issues debated in the parties' briefs. One is Fajardo's argument that,

regardless of the length of detention, the Government should bear such a burden. In *Velasco Lopez*, the Second Circuit declined to establish a "bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden," noting that on "any calculus," the petitioner's 15-month detention violated due process. *Velasco Lopez*, 978 F.3d at 855 n.13. Numerous district courts have since held that due process requires that the Government bear the burden of justifying detention of a noncitizen under § 1226(a), regardless of the length of their detention. *See, e.g., Reyes v. King*, No. 19 Civ. 8674 (KPF), 2021 WL 3727614, at *7 & n.7 (S.D.N.Y. Aug. 20, 2021) ("Neither the Circuit's decision in *Velasco Lopez* nor any other binding appellate authority overrules the overwhelming consensus of courts in this District that the Due Process Clause of the Fifth Amendment requires the Government to bear the burden to justify continued detention of a noncitizen who is detained pursuant to § 1226(a), even absent prolonged detention." (internal quotation marks omitted)), *appeal withdrawn sub nom. Reyes v. Neal*, No. 21-2615, 2022 WL 1154120 (2d Cir. Jan. 21, 2022); *Banegas*, 2021 WL 1852000, at *2–3 (citing cases); *Quintanilla v. Decker*, No. 21 Civ. 417, 2021 WL 707062, at *3 (S.D.N.Y. Feb. 22, 2021); *Linares Martinez*, 2018 WL 5023946, at *1. *But see Huanga*, 2022 WL 1145048, at *5 (reading *Velasco Lopez* to imply that "it may not be a violation of due process for [a noncitizen] to bear the burden of proof at a hearing that takes place shortly after their initial detention"). Given the prolonged detention in this case, this Court does not have occasion to address that issue. Similarly, because Fajardo is entitled to relief as a matter of due process under *Velasco Lopez*, the Court need not consider Fajardo's arguments based on the statutory interpretation of § 1226(a) and on the APA. *See, e.g., O.F.C.*, 2022 WL 4448728, at *3 n.4 (declining to address non-constitutional claims where habeas relief granted on

due process grounds); *Jimenez*, 2021 WL 826752, at *5 n.9 (same); *Linares Martinez*, 2018 WL 5023946, at *2 n.3 (same).

## CONCLUSION

For the foregoing reasons, the Court grants Fajardo's petition, to the extent it seeks a prompt bond hearing. Within 10 days of this Opinion and Order, respondents shall take Fajardo before an immigration judge for an individualized bond hearing, at which, to sustain Fajardo's continued detention, the Government must bear the burden to prove, by clear and convincing evidence, that he is a danger to the community or a flight risk. At such a hearing, the IJ is to consider alternatives to immigration detention and Fajardo's ability to post bond. Should respondents fail to provide Fajardo with such a hearing within 10 days, respondents shall immediately release him.[8]

The Clerk of Court is respectfully directed to terminate the motion pending at docket 8, and to close this case.

SO ORDERED.

Paul A. Engelmayer
Paul A. Engelmayer
United States District Judge

Dated: December 5, 2022
      New York, New York

---

[8] To the extent Fajardo alternatively asks this Court to order his release, that request is denied, as his entitlement under due process, as reflected in *Velasco Lopez*, is to a prompt bond hearing, not to release. To the extent Fajardo separately seeks an order enjoining respondents from relocating him from the New York City area while this habeas proceeding is pending, the Court denies this request as moot, as the bond hearing ordered herein is imminent and Fajardo will be afforded the right to attend that hearing.